Good morning. May it please the Court. My name is Henry Posada and I represent the petitioner Mohamed Honari. The petitioner is asserting that the removal charges brought against him by the government in this case did not apply to him. Since the time of the briefing in this case, this Court issued a decision called Perez Enriquez v. Ashcroft, which held that the Court could determine as a matter of law and fact whether an alien is subject to the case, the petitioner was wrongfully removed by the United States government. Specifically, we are arguing that one of the charges, namely, the one for being convicted of a crime of moral turpitude committed within five years of the date of admission, is res judicata because it was litigated in a prior immigration court proceeding. HONARI Wait a second. Res judicata? I mean, basically, they could have relied on it but chose not to. But how does res judicata bar the government from considering anew the legal significance of the fact of that prior conviction in a subsequent immigration proceeding? I don't understand the doctrine of res judicata to be that. ASHCROFT Well, Your Honor, in this case, we have two removal proceedings that occurred. HONARI Right. ASHCROFT We have the present removal proceeding. Before this proceeding, there was a prior removal proceeding in San Diego, California. The petitioner originally entered the country with a visa in December of 1992. In January of 1998, he was convicted of second-degree burglary. That burglary was committed in September of 1997 within five years of that date of And he was charged with 1227A2A little I. KENNEDY When you say charged, you're talking about a civil proceeding, essentially. You're not talking about a criminal. ASHCROFT Yes. He was charged with removal under the Immigration and Nationality Act. KENNEDY Okay. Go on with your res judicata analysis then. In a civil case. ASHCROFT Right. So part of the issue here is, since the time of the briefs, this Court issued a decision called Cheverman v. Ashcroft. Prior to that decision, we had Ocampo Duran and Rosas Ramirez in the BIA. What we had in those cases was aliens who had entered the country without inspection and subsequently adjusted their status and then got convicted of a crime involving moral turpitude or an aggravated felony. The date of admission to use under the Act would have been the date of adjustment of status in the absence of any other admission date. With Cheverman's date KENNEDY You still haven't answered my question. I think you're now launched into your argument. I still want to understand why the doctrine of res judicata bars the government when it could have considered the prior conviction but did not from considering it anew as a result of a subsequent conviction. I don't understand how res judicata even applies in this situation. The fact that the was adjudicated in your client's favor. But, Your Honor, they did rely on it in the first proceeding. See, there's two convictions here. There's one in 98 and post-adjustment of status there's one in 1999. What the government is now asserting is that the first conviction of 1998 can be used for purposes of the ground of removal for the crime involving moral turpitude committed within five years of the initial date of entry. And that's where I'm having the problem applying the doctrine of res judicata because it isn't as if your client successfully litigated with regard to the first conviction and convinced an immigration judge that the crime never occurred. I could understand if you were then arguing five years later they can't rely on it because it never happened as a result of it. But your argument is slightly different. Your argument is they could have relied on it, but they chose or they did rely on it. And now, I'm not sure I can even formulate the question. It's confusing. It's very confusing. It just doesn't sound like res judicata. That's the problem. But it is, Your Honor, because this is 1227A2A. In 1998 or in 1998 when they adjusted his status and granted Mr. Hanari a waiver in the first proceedings, the only charge the government could have used was a crime involving moral turpitude committed within five years. In these proceedings, they've alleged the very same charge, okay, for the very same crime. And that's already been litigated. Under the precisely same part of the statute? Yes, Your Honor. Both under one or both under one and two? In that case, it was only one because at that time he didn't have the June 1999 conviction. There's no other offense they could have relied on. Is there any res judicata as to two, sub two? Well, we're going to argue that as well in this case, Your Honor. I understand. But is that where you apply res judicata? Because that wasn't at issue in the last case, right? It was not at issue in the last case. Doesn't there have to be, I'm going back to basic black letter res judicata law, doesn't there have to be identity of issues in order for res judicata to apply? And in light of your answer to Judge Beezer's question, if the issues are different, then you fail on one of the preconditions for the application of the doctrine. The issues don't have to necessarily be identical. The way I understand the doctrine is the Posada exception to the res judicata rule. What authority do you have for that proposition? The general canon law principle bars a second suit between the same parties on the same claim or any part thereof. Same claim. And the question Judge Beezer asked you was, wasn't it a different claim? It's a different part of the statute that was at issue the first time around. No, Your Honor. It's the same part of the issue. There's two charges in this case. One under A2A little i and 2 little i. Little i was already litigated in the first proceedings. See, there's two charging documents in this case. There's a notice to appear on October 19th of 1999. And there's a large charge. Mr. Posada, I'm looking at the statute. And help me here. I'm looking at 8 U.S.C. section 1227, correct? Yes, Your Honor. And it's 2 in parentheses, capital A in parentheses. And then there's a little i for crimes of moral turpitude. And then there's a double i for multiple criminal conviction. Correct. And the first time around, there was no multiple criminal conviction because it was his first offense. So we couldn't have been proceeding under 2. That's correct. But in 1998, we are proceeding under 2 because he does have multiple criminal conviction. 1999. Right. Right. But see, there's two charges in this case. Right. So. And one of them is barred because it was litigated the first time. Little i. The question is, does he have the status as defined by the statute? And I assume you would agree with us that he has been convicted of two crimes. He has. Whether you have race judicata or not, he complies with this. He meets the statutory requirement of status, right? If I understand the Court correctly by the word status. He's committed two crimes. Yes, Your Honor. Felonies, right? But the two crimes, Your Honor, we are arguing one of those was in the prior proceeding. And. So what? Well, Your Honor. It's not double jeopardy. It's not a criminal case. It's a status offense. Maybe you're talking about something like equitable estoppel. We are arguing that when Mr. Hanari, when his first removal proceedings ended favorably, and it was based on the first conviction. And when the second time they bring him, they shouldn't bring that one up. Correct. We are arguing that he found repose. We are aware of this Court's decision in Molina v. I.N.S., but the decision in that case leaves some doubt whether it should be limited to its facts. The Court said, when the alien suffers another conviction or engages in further misconduct cognizable under the immigration laws, the Attorney General must make a new decision whether to deport in light of the new information. In doing so, she must consider the totality of the alien's conduct and reweigh the equities. This is not a withdrawal of the earlier waiver. It is rather a recognition that waiver of deportation is a matter of discretion, which may be exercised differently once there is a new triggering event, such as conviction of a new crime involving moral turpitude. The earlier convictions, which may have warranted lenient standings by themselves, could require harsher judgment once the alien has shown a pattern of misbehavior. It seems to me that in this case, Molina, the Court was really more looking at if you're applying for yet a third waiver, which gets denied because of the old convictions, and the balancing of equities to decide whether or not to grant the waiver, of course it's appropriate to consider the prior criminal conduct. But that's not your argument. Your argument is that with regard to the second conviction, the Attorney General is barred by the doctrine of res judicata from even considering the fact that he was convicted in 1993. Isn't that your argument? That is our argument. Okay. We are arguing that it should be barred by res judicata. I understand. I understand. Because it is a part of the prior litigation. Mr. Hanari found repose. Now, this is a 212H scenario, Your Honor. This is different than the 212C scenario where the alien is a lawful permanent resident, gets convicted, applies for another waiver. Every time the waiver is granted, they revert back to their status as a lawful permanent resident or they maintain it. In this case, when his first proceedings ended favorably, he accomplished lawful permanent resident. He went from being a nonimmigrant or out of status to accomplishing permanent residence and being allowed to remain here indefinitely. He found repose in the first proceedings. And the government shouldn't be able to use a part of the first claim to satisfy I think we understand your argument. One other issue along these lines of the charges not being applicable is that the judge used the wrong standard in her finding of removability. In her oral decision, she stated that she can use the entire moral character, Mr. Hanari's entire good moral character in determining his removability, which is just simply not a standard that anyone has ever heard of before. This is page 22 of the record. Continuing and arriving at that conclusion, the immigration judge had recited from the conviction records all of the numerous counts to which Mr. Hanari pled guilty in each of the two criminal cases. Even though the government hadn't charged with any of those other counts other than one count in each of the two criminal cases. It looks like the judge was engaging in some kind of discretionary determination in terms of deciding whether or not Mr. Hanari should be removable as charger. It was almost as if she was adjudicating some kind of a waiver that wasn't even before the court. Again, Your Honor, we ask that the court find that the petitioner was not removable as charged because of the repose that's embedded in the 212-H waiver. And in light of the immigration judge's multiple dates of admission and her unclear findings of removability, as well as her use of a good moral character standard, we ask that the court at a minimum remand the case for further proceedings and clarification. Thank you. Thank you, Mr. President. Thank you. Good morning, Your Honors. I'm Anthony McCaslin, representing the Attorney General in this case. This Court lacks jurisdiction over the petition because petitioner is removable due to the fact that he has committed two crimes involving moral turpitude after he was admitted at any time into the United States. And this Court knows in applying the jurisdictional limiting statute of 242, this Court can look at three jurisdictional facts to determine his jurisdiction, whether the petitioner is an alien, whether the petitioner is removable, and whether that removability comes from having committed a criminal crime, whether he's an alien. Alien. Okay. You know, I thought you said something like anyway. Yes, Your Honor. I'm getting old. My hearing isn't too good. I thought you said alien or something like that. I'm sorry, Your Honor. So the first factor and the third factor, there's no contest. Really, the only question before this Court is whether the petitioner is removable as charged. And on that question ---- I think your opponent takes the position that there's either a collateral estoppel, that there's a double jeopardy, or there's a prior adjudication, and for that reason, we can only find one crime because the other one's buried. It doesn't exist anymore. No, Your Honor. Legally. My opponent is mistaken in that. And this Court's decision in Molina is fairly definitive on that particular question. And I think it's fair to say that in the case of Molina, it's a very, very similar issue concerning the waiver that he received first, the good grace he received first from the Attorney General, and then went on to commit further crimes. The good what did he get first? The grace, the waiver. He was removable, and the Attorney General decided to waive that ground of removability and allow him to remain in the United States. And then less than a year later, he committed multiple crimes. But in any event, in that ---- in Molina, in the Molina case from this Court, they look at the very, very similar issue, a waiver of inadmissibility. In that case, it was 212C. In this case, it's 212H. There really is no distinction between the two in the general principle of law that Molina stands for. Molina stated this. A waiver of removability, in that case it's 212C, in this case it's 212H, does not expunge the conviction, but rather permits the alien to stay in the United States despite his criminal conduct. The conviction remains on his record to be considered if and when the alien again gives the Attorney General cause to examine his removability. Clearly, in this particular case, the Attorney General had cause to again examine the petitioner's removability in light of his convictions in 1999 for multiple burglaries, fraud, theft, and these all occurred after the waiver. So the case law in this particular circuit is fairly clear that that does not expunge or does not bring in the doctrines of double jeopardy, erased judicata, or collateral estoppel, as Your Honor alluded to, because it simply does not wipe the convict to slay clean, and that's fairly embedded in this Court's law. And so once you find the three elements, we lack jurisdiction to consider anything else, right? That's correct, Your Honor. That's correct, Your Honor. You lack jurisdiction. And the one point on the jurisdictional, that was the – there's two questions to determine that question, 212H, and then the date of admissibility. In this case, and this, again, the Court has clear precedent on this, that the date of admissibility is the date the alien lawfully enters the United States. And in this case, it's December 19th, 1992, and that's Chauverman, which came out last year. And that definitively says that that is the date of admission. So if that's the date of admission and he's committed two crimes involving moral turpitude at any time after admission, as the statute says, then this Court lacks jurisdiction. And that is exactly what is at play in this particular case, Your Honor. Because the Petitioner has committed two crimes involving moral turpitude since his admission in the United States, this Court lacks jurisdiction over the petition. Subject to the Court's questions, that concludes the government's argument. Thank you, Your Honor. Thank you, Mr. McAffery. Mr. Posada. Thank you. The question still remains, Your Honors, about the two charges. There are still two charges here in this case. We've got the two crimes involving moral turpitude charge, and we've got the single crime involving moral turpitude committed within five years of admission. But please respond to Mr. Nacastro's point. You really are arguing the equivalent of expungement. By whatever theory we get there, you are essentially saying that the Attorney General may not consider, based on your client's subsequent behavior, that he had previously engaged in what would otherwise be a crime of moral turpitude on the first conviction. We wouldn't necessarily take it that far, Your Honor, because I can conceive, for example, of a situation where, starting from today, in the future, suppose the Petitioner were convicted of yet another offense. At that point, certainly he would be convicted of two crimes involving moral turpitude as under the section of the law. Or, moreover, a different scenario could be Mr. Hanari could be applying for a waiver of removal at some point in the future. We're not arguing that the convictions are expunged and that they couldn't be considered in the balancing of equities. At this point in time, all we're arguing is that when that conviction, when deportability removal consequences to the first conviction were waived, it stopped it there from being a consequence to the finding of deportability in the two crimes involving moral turpitude committed at any time after admission. I hear your argument, but I mean, it still seems like the practical effect is the government is forever barred from considering the fact that he engaged in a crime of moral turpitude in 1993 for whatever future immigration consequence that might have. We wouldn't take it that far, Your Honor. I think Molina was, when you read the rationale of Molina, it seems as though they were using the prior convictions that were waived in the weighing of equities for purposes of whether it was correct or not to deny him a third waiver. It's a discretionary determination under 212C or 212H, for that matter. Kennedy, do you believe that equity can overrule a statute of Congress? I believe the statute says do this. You believe equity can say don't do it? I believe it does happen a lot of times. In fact, just last month. General proposition of the law, that is a correct statement of the law, that equity can trump the statute? Well, to the extent that it's a second suit between the same parties on the same claim or any part of it, yes. Just last month, this Court, in a case called Hernandez-Guadarrama v. Ashcroft, cited in a footnote a Fifth Circuit case that treated the issue of res judicata in an immigration proceeding, Medina v. Hernandez in the Fifth Circuit. For example, in that case, we had an alien who entered the country. He was placed in the old exclusion proceedings. He was able to somehow convince the government that he had a derivative claim to citizenship, and the government bought into it. And the immigration judge admitted him as a U.S. citizen. At some time in the future, the government realized that the mistake might have been made and he might not have been a citizen. The government then initiated deportation proceedings and charged him under a different statute back then. And the Fifth Circuit said, look, these are – this is essentially the same claim, this is essentially the same facts, same parties. The Court found that it's res judicata. Even if it was an erroneous decision, it was still a valid judgment, and it was res judicata, and the government was foreclosed from bringing a new case under deportation different from exclusion proceedings. So in this case, Your Honor, similarly, to say that the two crimes involving moral turpitude, to the extent that that charge requires consideration of something in the past where the alien was able to establish repose and get it out of his life and not have to suffer immigration consequences as a result thereof, deportation consequences, the same should apply here. And this crime involving moral turpitude charge, for the two crimes involving moral turpitude anyway, should be barred under the same theory. Thank you very much. Thank you, Mr. Kessler. Good argument. Okay. Thank you. Thank you. Well, we've come to the end of our time.
judges: Pregerson, Beezer, Tallman